MEAD (CUMMINGS v.). See Case No. 3,476.

———

## Case No. 9,366.

### MEAD v. NATIONAL BANK OF FAYETTEVILLE.

[6 Blatchf. 180; 2 N. B. R. 173 (Quarto, 65); 7 Am. Law Reg. (N. S.) 818; 1 Am. Law T. Rep. Bankr. 108; 15 Pittsb. Leg. J. 137.][1]

Circuit Court, N. D. New York. Sept. 21, 1868.

BANKRUPTCY—PARTNERSHIP—NOTES ENDORSED INDIVIDUALLY—JOINT AND SEPARATE ESTATES —ENGLISH RULE OF ELECTION.

1. Where a creditor, to whom a debt was due by a copartnership composed of three persons, took, for a part of it, the note of the copartnership endorsed by one of the copartners, and for other parts of it, severally, three notes, each made by one of the copartners, and endorsed by the two copartners other than its maker, and afterwards the copartners were adjudged bankrupts, and the creditor proved his debts against the makers alone of the four notes: *Held*, that he was entitled to dividends, according to such proofs, out of the several estates, joint or separate, against which the proofs were made.

[Cited in Re Bigelow, Case No. 1,397; Re Bradley, Id. 1,772; Emery v. Canal Nat. Bank, Id. 4,446; Re Long, Id. 8,476; Re Thomas, Id. 13,886.]

[Cited in Winslow v. Wallace, 116 Ind. 321, 17 N. E. 923; Ex parte Nason, 70 Me. 367.]

2. The copartners, in respect to the notes made or endorsed by them individually, were accommodation makers or endorsers for the copartnership, which, as between the copartners, and in equity, was the principal debtor.

3. There is nothing in the 36th section of the bankruptcy act of March 2, 1867, (14 Stat. 534,) which, in terms, prohibits such creditor from proving his debts, and taking dividends, against the joint and separate estates of his debtors, in virtue of their joint and several liabilities respectively, he being a legal creditor of the individual copartners in respect to the notes bearing their individual names either as makers or endorsers.

[Cited in Re Bigelow, Case No. 1,397.]

4. It is the doctrine of the English court of chancery, that, in bankruptcy, a creditor who has knowingly taken both the copartnership and the individual obligation of his debtors for the same debt, must elect whether he will prove his debt against the joint estate or the separate estate of his debtors.

[Cited in Re Tesson, Case No. 13,844; Re Bigelow, Id. 1,397; Re Foot, Id. 4,906; Re Vetterlein, 20 Fed. 110.]

[Cited in Roger Williams Nat. Bank v. Hall, 160 Mass. 171, 35 N. E. 666.]

———

[1] [Reprinted from 19 N. B. R. 81, by permission.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. 1 Am. Law T. Rep. Bankr. 108, contains only a partial report.]

5. The English rule is. that the mere form of the security or evidence of indebtedness does not control in respect to the question whether the debt can be proved against the copartnership, or must be proved against the separate estate of a partner.

6. Whether the creditor in this case would, at his election, have a right to prove his whole debt against the copartnership estate alone, or would have a right to prove. upon the copartnership note, against the copartnership and the endorsers on that note, and, upon the other notes. against the several makers and endorsers thereof, quere.

[Cited in Re Bigelow, Case No. 1.397.]

7. The English rule of election, discussed.

8. Whether. in this case. the joint estate of the copartnership ought not to be deemed a debtor to the separate estates of the several copartners. to the extent of any payment to be made, on the debt due to the creditor, out of such separate estates, quere.

[This was a bill in equity by Charles H. Mead against the National Bank of Fayetteville and others. Final hearing on pleadings and proofs.]

HALL, District Judge. The defendants Edwin P. Russell, Porter Tremain. and Augustus Tremain, were adjudged bankrupts on the 6th of January, 1868; and the plaintiff was soon after appointed their assignee. These defendants had been copartners in business, and, on the 5th of December, 1866, were indebted to the other defendant, the bank, in the sum of $43,000. This indebtedness was evidenced by sundry notes of the firm, as maker. Each of these notes of the firm bore the endorsement of one of the copartners. Porter Tremain being such endorser for $13,500, Augustus Tremain for $12,000, and Edwin P. Russell for $17,500. On the day last-named, and for reasons not deemed necessary to be determined or discussed. the form of the paper which evidenced such indebtedness was changed. on the application of the officers of the bank; and the notes of the firm were taken for $14,000, those of Porter Tremain for $10,000. and those of Augustus Tremain for $9,000, and those of Edwin P. Russell for $10,000. The notes made by the firm were endorsed by Edwin P. Russell, and those made by one of the individual partners, were respectively endorsed by the other two members of the firm. These notes were all given for the old previously-existing copartnership debt, and they were afterward renewed by like notes and like endorsements, all of the original and renewed notes and endorsements being in fact securities for debts which were the proper debts of the copartnership. In respect to the firm, whatever may have been the legal relations between the bank and the individual partners (see In re Babcock [Case No. 696]). these individual partners, in respect to the notes made or endorsed by them in their individual names. were accommodation makers or endorsers for the benefit of the firm; and the firm, as between the partners and in equity. must be considered as the principal and primary debtor. As between the bank and the individual partners, the making or endorsing of these notes created a legal obligation against the individual partner who thus made or endorsed such notes, and the bank might sue upon and enforce such obligation, according to its form and terms. It, therefore, had its election to sue either the maker or the endorser; and it might, if it chose, have maintained separate suits against the maker and each endorser, and taken a judgment against each. In short, the bank, when these notes were dishonored, was the legal creditor of the several parties thereto, according to their several and respective obligations; and there is no reason for holding that the legal relation of debtor and creditor, thus subsisting, did not exist under the bankruptcy act. In re Babcock, ubi supra.

After the adjudication in bankruptcy, the bank, being then the holder and owner of the paper thus given in renewal, proved its debts as against the makers alone, that is, against the firm and joint estate. upon the firm-note for $14,000, and against the individual members of the firm and their separate estates. upon the notes signed by each partner respectively; but it did not prove any demand against the separate estates of the copartners, upon such endorsements. There being assets in the hands of the plaintiff belonging to the joint estate of the bankrupts, as such copartners, and also assets belonging to the separate estates of the several individual members of the firm, and the relative amount of those assets being such that the bank would receive a much larger dividend, if allowed to take a dividend on its debt or debts as thus proved, partly against the firm, and partly against the partners individually, the plaintiff, as assignee, has filed his bill in this court, and now insists, that the whole debt of the bank, being in equity and in fact the debt of the firm, must be proved as a debt against, and take a dividend from, only the joint estate of the bankrupts, and that no part of it can be paid out of the separate or individual estates of the bankrupts, in consequence of their individual liability either as makers or endorsers.

It is impossible for me, at this time, to give this case the careful examination and deliberate consideration which its importance deserves, without neglecting other cases having equal claims to an early decision. The counsel who argued the case were, as they said, unable to find any decision, under the act of 1841 [5 Stat. 440], which determined this question; and my own limited research has brought under my observation but a single case, (that of In re Farnum [Case No. 4.674]. which will be hereafter noticed,) in which the question appears to have been decided.

[In respect to the firm, whatever may have been the legal relations between the bank and the individual partners (see Babcock's

Case [supra]), these individual partners, in respect to the notes made or endorsed by them in their individual names, were accommodation makers or endorsers for the benefit of the firm, as between the partners and in equity, must be considered as the principal and primary debtor. As between the bank and these individual partners, the making or endorsing of these notes created a legal obligation against the individual partner who thus made or endorsed those notes, and the bank might sue upon and enforce such obligation according to its form and terms. It therefore had its election to sue either the maker or the endorser, and it might, if it chose, have maintained separate suits against the maker and each endorser, and taken a judgment against each. In short, the bank, when these notes were dishonored, was the legal creditor of the several parties thereto, according to the form of their several and respective obligations; and there is no reason for holding that the legal relation of debtor and creditor thus subsisting did not exist under the bankrupt act. Babcock's Case, ubi supra.][2]

The act of 1867 (section 36) provides, "that, where two or more persons who are partners in trade shall be adjudged bankrupt, either on the petition of such partners, or any one of them, or on the petition of any creditor of the partners, a warrant shall issue in the manner provided by this act, upon which all the joint stock and property of the copartnership, and also all the separate estate of each of the partners, shall be taken, excepting such parts thereof as are hereinbefore excepted; and all the creditors of the company, and the separate creditors of each partner, shall be allowed to prove their respective debts; and the assignee shall be chosen by the creditors of the company, and shall also keep separate accounts of the joint stock and property of the copartnership, and of the separate estate of each member thereof; and, after deducting out of the whole amount received by such assignee, the whole of the expenses and disbursements, the net proceeds of the joint stock shall be appropriated to pay the creditors of the copartnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors; and, if there shall be any balance of the separate estate of any partner, after the payment of his separate debts, such balance shall be added to the joint stock, for the payment of the joint creditors; and, if there shall be any balance of the joint stock, after payment of the joint debts, such balance shall be divided and appropriated to and among the separate estates of the several partners, according to their respective right and interest therein, and as it would have been if the partnership had been dissolved without any bankruptcy; and the sum so appropriated to the separate

estate of each partner shall be applied to the payment of his separate debts." The same provisions, in substance, are contained in the act of 1841 (section 14); and these provisions have been said to be in accordance with the rule as previously established. See In re Marwick [Case No. 9,181], before Judge Ware; Collins v. Hood [Id. 3,015]; In re Ingalls [Id. 7,032]. These provisions of our statute do not, in terms, prohibit the bank, which had taken the precaution to require the note of the copartnership to be endorsed by the members of that copartnership, in their individual names, before giving credit upon it, from proving its debts and taking dividends against the joint and separate estates of these debtors, in virtue of those joint and several liabilities respectively; for the bank is clearly a legal creditor of the individual partners, in respect to the notes upon which their individual names appear, either as makers or endorsers. But the English court of chancery, (in the absence, it is said, of any statutory provision on the subject,) has, it seems, established the doctrine, that, in cases of bankruptcy, a creditor having knowingly taken the copartnership and the individual obligation of his debtors for the same debt, must elect whether he will prove his debt against the joint estate or the separate estate of his debtors. Colly. Partn. §§ 940–948; Avery & H. Bankr. 308; 2 Lindl. Partn. (2d Ed.) pp. 1188–1195; 87 Law Lib. pp. 1013–1025. This doctrine of election necessarily concedes, that the creditor is a creditor of the firm and likewise of the separate partner whose individual liability he has taken the precaution to exact, and is, therefore, an authority sustaining the claim of the bank in this case, that it is the creditor of the individual partners upon the notes signed or endorsed by them individually.

The reasonable doctrine, that the mere form of the security or evidence of indebtedness does not control in respect to the question whether the debt can be proved against the copartnership or must be proved against the separate estate of a partner, seems, also, to be well established in England. See cases referred to by Avery & H. Bankr. pp. 309–311; Agawam Bank v. Morris, 4 Cush. 99. Thus, where a firm borrowed money for partnership purposes, and only one of the partners gave a bond for its payment, the other being a witness to it, and the moneys being entered in the cash book of the firm, it was held, that the debt therefor might be proved as a joint debt. Ex parte Brown [cited in] 1 Atk. 225; Ex parte Emly, 1 Rose. 61.

In this case, it is probable that the bank would, at its election, have a right to prove its whole debt against the copartnership estate alone, if the rules established by the English court of chancery were to be adopted; but it is not necessary now to decide whether the bank has such right to prove

---

[2] [From 2 N. B. R. 173 (Quarto, 65).]

against the joint estate, or whether it has a right to prove against the firm upon the firm-note, and against the endorsers thereon, and against the general makers and endorsers of the notes not signed in the firm-name, according to the legal liability of each, for the bank has not, as yet, insisted upon a right to prove its debts, except as against the makers of the several notes which evidence the indebtedness. Looking to the questions actually presented in this case, I am of the opinion. that the bank had a right to prove its debts against the makers of the notes held by it, and is entitled to dividends from the joint and separate estates of the bankrupts, according to such proof. The utmost that can be claimed against the bank is, that it may be driven to its election; and. as it has proved its debts against the makers of the notes, and them alone, no valid objection has been urged against such proof.

It may, perhaps, be doubtful, whether the bank is compelled to elect, according to the English practice in bankruptcy. In the case of In re Farnum [Case No. 4,674], already referred to, the learned judge of the Massachusetts district held, that, under the bankruptcy act of 1841, a creditor who presented a bill of exchange drawn by the firm and endorsed by one of the partners, was entitled to a dividend from the joint estate of the firm, and also a dividend from the separate estate of the partner who made such endorsement; and he repudiated the English rule, which required an election by the creditor under like circumstances. The question seems to have been carefully considered by Judge Sprague, and I confess I regard the rule he adopted as more reasonable than that of the English courts; but, if I did not, I should be unwilling to disregard a decision, directly in point, made by that able judge, without very careful and deliberate consideration. The English rule has been disapproved by some of the most eminent judges and ablest lawyers of England; and Judge Sprague, in the case alluded to, declared, that the right of a party, holding two valid obligations, to the benefit of both. was founded both in law and justice. and that he did not think himself authorized to set aside that right, on account of an arbitrary rule, justly reprobated by the most eminent judges and jurists in England, and never recognized in this country. The English rule was condemned by Judge Story (Story, Partn. § 376 et seq.); and, in Borden v. Cuyler, 10 Cush. 476, Judge Cushing, in delivering the opinion of the court, declared, that it remained a mooted question in the United States, and that, in Massachusetts. the practice and the weight of professional opinion favored the double proof. but that the point had not then been adjudicated. It was not adjudicated in that case, nor has it been in any other case in our own courts, that has fallen under my ob-

servation, except in the case of In re Farnum, already noticed; and, upon the authority of Judge Sprague's decision, and the best consideration I have been able to give to the questions presented. I am of the opinion that the bank had, at least. a right to prove its debts and claim dividends in the manner stated.

It is not, perhaps. necessary now to consider, whether the assignee, as the representative of the creditors of the individual partners, is not, in equity, entitled to require, that the joint estate shall be deemed a debtor to the assignee, as such representative, to the extent of any payments which may be made upon the debt of the bank out of the separate estates of the individual partners, in the same manner that any other party, who has made or endorsed similar notes for the accommodation of the firm, might be—and that, whether the English doctrine of election -is, or is not, to prevail. The bill states, that the assets of the firm, though nominally amounting to about $50,000, are really worth much less; that the individual assets of the partners, over and above incumbrances, are about as follows: Russell's, $7,000; Porter Tremain's, $11,000; and Augustus Tremain's, about $3,000. The amount of the debts (other than those of the bank) proved against the firm, and against the several individual partners, is not stated, but the firm was insolvent and bankrupt, and it is alleged that Russell, individually, owed debts amounting to about $900, while the other two partners owed no individual debts likely to be proved against their individual estates; but I see no statement of the firm or individual debts proved, either in the bill or in the testimony in the case, other than the debts held and proved by the bank. At all events, the question just suggested has not been argued, and a final disposition of it might require a settlement of the accounts of the individual partners with the firm; and, as the case decided by Judge Sprague, and the intimation made in 10 Cush., were not called to the attention of the counsel, and were not discussed by them, I think it better not to make any decree in this case at present. but to advise the counsel that. in my opinion. the bank has a right to dividends against the joint and separate estates of the bankrupts. according to their proofs in the case, and that any other question in the case may be further argued. Further research by the counsel or myself may lead to the discovery of other cases decided under the act of 1841, and bearing on the main question, but I am not able, at this time. to pursue the investigation. See Howe v. Lawrence, 9 Cush. 559. 560; Somerset Potters' Works v. Minot, 10 Cush. 597; Agawam Bank v. Morris. 4 Cush. 99; Fuller v. Hooper. 3 Gray, 334; Tucker v. Oxley, 5 Cranch [9 U. S.] 34.